Mr. Justice Hunt
delivered the opinion of the court:
This is an appeal from the Court of Claims. The facts neces-essary to be considered are the following, as found by that court:
<c On the 20th of February, 1862, while Louisiana was in the possession and under the control of the rebels, the claimants sent their traveling clerk from New Orleans into the interior of Louisiana, viz, the parishes of St. Martin and St. Landry, to collect moneys due them there, and gave him authority to purchase sugar and cotton for them.
“In March or April, 1862, the claimant, Lapene, requested one Avegno, who was then going from New Orleans to said parishes, to remit to the said clerk the sum of $4,000 or $5,000, and to assist said clerk in the business of buying sugar and cotton, which the said Avegno agreed to do, and, in pursuance of that agreement, delivered to said clerk, at New Iberia, in the parish of Iberia, then in the possession and under the control of the rebels, $5,000, consisting of ‘bank-notes, confederate money, and shin-plasters.’
“ While the said clerk and the said Avegno were in said parishes of St. Martin and St. Landry, viz, on the 27th day of April, 1862, the city of New Orleans ivas captured by the United States forces, and thenceforth through the whole period of rebellion was held 'by those forces.
*36 “After said capture, the cotton, for tbe proceeds of which this suit is brought, was purchased by the said clerk with the said sum of $5,000 and other moneys collected by him in the said parishes, which parishes were, when the purchases were made, in the possession aud under the control of the rebels. It was purchased in nine or ten small lots, and left at the places whore it was purchased.
“The said clerk returned from those parishes to New Orleans on the 14th of July, 1862. There is no evidence of any communication having been had between him and the claimants, in relation to the said purchases of cotton, between the capture of New Orleans and the clerk’s return to that city, except the aforesaid delivery to him by Avegno of the said $5,000.
“ The cotton so purchased remained at the points at which it was purchased until April and May, 1863, when, it was captured by the United States military forces and shipped to and received by Col. S. B. Holabh’d, chief quartermaster, of Ike Department of the G-ulf, at New Orleans.”
The Court of Claims adjudged that the plaintiffs were entitled ' to the net proceeds of the cotton so seized by the United States.
All commercial contracts with the subjects or in the territory of the enemy, whether made directly by one in person, or indirectly through an agent, who is neutral, are illegal and void. This principle is now too well settled to justify discussion. (Woolsey, International Law, s. 117; Montgomery v. United States, 15 Wall., 395.) No property passes and no rights are acquired under such contracts.
In March, 1862, the whole of the State of Louisiana was in the military possession of the confederate forces. Intercourse between the inhabitants of the different portions thereof was legal, and contracts made between them were legal.
On the 27th of April, in the same year, the city of New Orleans was captured by the military forces of the United States, and thereafter remained under their control. From that time commercial intercourse between the inhabitants of that city and the inhabitants of other portions of the State of Louisiana which remained under the confederate rule became illegal. Ordinarily the line of non Intercourse is the boundary line between the territories of contending nations. The recent war in the United States was a civil war, in which portions of the same nation were engaged in hostile strife with each other. *37 The State of Louisiana, although one of the United States, was under the control of the confederate government and their armies, an d was an enemy’s country. While the city of New Orleans was under such control it was a portion of an enemy’s country. When that city was captured by the forces of the United States, the line of non-intercourse was changed, and traffic before legal became illegal. This line was that of military occupation or control by the forces,of the different governments, and not that of State lines. This principle was expressly decided in Montgomery’s Case, above cited. There the cotton sold was in the parish of La Fourche, a parish of the State of Louisiana, and belonged to JohnsoD, an enemy domiciled in an enemy’s country, to wit, the parish of La Fourche, in the same State. The sale was made by an agent of Johnson, in the city ■of New Orleans, to Montgomery, a British subject. This court held the sale to be void, and that no title passed to Johnson.
Like that in Montgomery’s Case, the agency here was created while it was legal to create an agency. In each case, also, existed the important fact that the transaction of purchase took place after the parties became residents of hostile portions of the same State. Burbridge was appointed the agent of Johnson in Montgomery's Case, as was the agreement in this case made with Avegno, and the money advanced by him, while the parties were all residents of and under the control of the confederate government. But the cotton was sold by Burbridge, •as here the cotton was purchased by the clerk, after this relation had ceased. In each instance the purchase of the cotton was a transaction with an alien enemy.
The agency to purchase cotton was terminated by the hostile position of the parties. The agency to receive payment of debts due to Lapene & Co. may well have continued. But Avegno was no debtor to that firm. He advanced money to their agent when it was legal to do so. With this money, and other moneys belonging to them, while in an enemy’s country, the agent of the plaintiffs bought the cotton in question. This purchase gave effectual aid to the enemy, by furnishing to them the sinews of war. It was forbidden by the soundest principles of public law. The purchaser obtained no title to the cotton, and has no claim against the Government for its capture.
The judgment of the Court of Claims must be reversed.
Dissented, Mr. Justice Milled. and Mr. Justice Field,